FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 29, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK M., | No.1:17-CV-03115-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 16. Attorney D. James Tree represents Mark M. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on January 29, 2014, Tr. 77, alleging disability since September 1, 2009, Tr. 176, due

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

to chronic knee pain, left shoulder pain, depression, mood disturbance, and personality disorder, Tr. 200.  The applications were denied initially and upon reconsideration.  Tr. 104-11, 115-20.  Administrative Law Judge (ALJ) John W. Rolph held a hearing on October 5, 2015[1] and granted a continuance for Plaintiff to seek representation.  Tr. 21, 40, 152.  On December 15, 2015, the ALJ held a second hearing and heard testimony from Plaintiff and vocational expert, Kimberly Mullinax.  Tr. 37-76.  At this hearing, Plaintiff amended his onset date to January 29, 2014.  Tr. 44.  The ALJ issued an unfavorable decision on January 20, 2016.  Tr. 21-32.  The Appeals Council denied review on April 28, 2017.  Tr. 1-6.  The ALJ's January 20, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 30, 2017.  ECF No. 1.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 51 years old at the date of application.  Tr. 177.  He completed the twelfth grade in 1989.  Tr. 201.  He also reported that he had completed some college, but had not attained a degree.  Tr. 45-46, 218.  His reported work history includes the jobs of general laborer for a construction company, maintenance worker at a convenience store, and newspaper deliverer.  Tr. 201.  Plaintiff reported that he stopped working on September 1, 2009 due to his conditions.  Tr.

---

[1]There is no transcript from this hearing in the record.  Instead, the ALJ stated at the December 15, 2015 hearing that he previously held a hearing on this matter, Tr. 40-41, and in his January 20, 2016 decision, the ALJ stated that he granted a continuance, Tr. 21.  Upon remand, any existing transcript from the October 5, 2015 hearing should be added to the record.

200.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from

engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 20, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 29, 2014, the date of application. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: left arm problems/pain; left knee problems/pain; obesity; opioid dependence; depression/dysthymic disorder; anxiety; personality disorder, not otherwise specified; and obsessive-compulsive disorder. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> He is able to lift up to 20 pounds occasionally and lift and carry up to 10 pounds frequently in light work defined by the regulations. He can stand and walk a combined total of 6 hours in an 8-hour day, for up to 30 minutes at a time. He can sit for 6 hours in an 8-hour day. He must be allowed to sit or stand alternately at 30-minute intervals for 2 to 5 minutes at a time. He may frequently balance and stoop. He may occasionally kneel, crouch and crawl. He may occasionally push, pull and engage in foot pedal operations with the left lower extremity. He

> may occasionally push, pull and reach overhead with the left upper extremity. He may frequently engage in handling with the left upper extremity. He can never climb ladders, ropes and scaffolds. He must avoid more than occasional exposure to extreme cold, vibration and hazards such as dangerous machinery and unsecured heights. He is fully capable of learning, remembering and performing simple and detailed work tasks up through and including Specific Vocational Preparation (SVP) 4-level jobs. He can concentrate for up to 2 hours at a time with normal breaks, and adapt to routine changes in the workplace. He may have frequent contact with supervisors and coworkers. He may have occasional contact with the public.

Tr. 26-27. The ALJ found that Plaintiff did not have any past relevant work. Tr. 31.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the job of delivery driver. Tr. 32. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 29, 2014, through the date of the ALJ's decision. Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by (1) failing to consider listing 1.07 at step three, (2) failing to properly weigh the opinion evidence, (3) failing to apply grid rule 201.12, and (4) failing to properly address Plaintiff's symptom statements.

## DISCUSSION

**1. Listing 1.07**

Plaintiff alleges that the ALJ erred at step three by failing to address listing 1.07, fracture of an upper extremity, in consideration of Plaintiff's left elbow

fracture. ECF No. 12 at 3-7.

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is presumed disabled at step three, and there is no need to make any specific finding as to his ability to perform past relevant work or any other jobs. 20 C.F.R. § 416.920(d). An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment, and a boilerplate finding is insufficient to support such a conclusion. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence)). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).

In August of 2013, Plaintiff fell and fractured his elbow resulting in pain. Tr. 262, 272. An x-ray performed in October of 2013 showed "a minimally displaced radial head fracture involving less than 20% of the articular surface. There is healing noted." Tr. 272. In March of 2014, orthopedic doctor, Alan G. Greenwald, M.D., "explained that it would be reasonable to do a radial head resection and anterior capsulectomy as the open procedure." Tr. 273. Dr. Greenwald noted that Plaintiff indicated he would "think about this." *Id*. In November of 2015, Jeremiah Crank, M.D. described the elbow as having a "radial head fracture and misaligned with othro offering surgical correction," but Plaintiff had not followed up with the orthopedic clinic regarding the surgical correction. Tr. 424. All of this evidence was before the ALJ prior to his decision. Tr. 36.

In the decision, the ALJ stated that of the listings for physical impairments, he considered listing 1.02, major dysfunction of a joint, and found that Plaintiff did

not meet the criteria. Tr. 24. As part of his appeal, Plaintiff submitted a March 28, 2016 letter from Rox Burkett, M.D. to the Appeals Council. Tr. 611-14. Dr. Burkett was previously a medical consultant for Utah Disability Determination Services. Tr. 612, 614. He reviewed the medical evidence in the record and drew two conclusions: First, that evidence was overlooked that puts Plaintiff's "upper extremity chronic radial fracture at listing level for 1.07." Tr. 612. Second, that with the "unhealed chronic non-union of the left proximal radial head and misalignment as noted in (7F/44) he could not reasonably do SGA until this is corrected." Tr. 613. The Appeals Council reviewed Dr. Burkett's opinion and associated it with the administrative record, but concluded that there was no reason to review the ALJ's decision. Tr. 1-2, 4.

First, Dr. Burkett's opinion must be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

Second, the ALJ found Plaintiff's "left arm problems/pain," as a severe impairment at step two, Tr. 23, but he did not provide any analysis of whether this impairment alone or in combination with other impairments meets or equals listing 1.07, fracture of an upper extremity, Tr. 24. The ALJ had the same evidence before him that Dr. Burkett reviewed. The diagnosis of fractured elbow/radial head appears consistently throughout these records. Tr. 262-63, 267, 272-73, 291, 295-96, 301, 351-52, 384, 395-96, 423-24, 426, 452-53, 460, 464. Furthermore, Plaintiff testified regarding his broken elbow at the hearing. Tr. 45. Considering the title of listing 1.07 is "fracture of an upper extremity," the ALJ's failure to address Plaintiff's elbow fracture under this listing is significant. Since he failed to

discuss this listing, the Court cannot evaluate whether the ALJ's determination, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, is based on substantial evidence because the ALJ's hearing decision does not provide any analysis.[2]  Therefore, the ALJ's omission of listing 1.07 at step two is an error.

Defendant alleges that Plaintiff has not meet his burden establishing that Plaintiff meets or equal a listing and that he failed to argue the listing criteria at the hearing.  ECF No. 16 at 5-9.  While the Ninth Circuit has repeatedly held that an ALJ is not required to discuss the combined effects of impairments or compare them to any listing in an equivalency determination without the claimant presenting evidence in an effort to establish equivalence, *Lewis*, 269 F.3d at 514; *Burch*, 400 F.3d at 683; *Kennedy*, 738 F.3d at 1178, Plaintiff is not asserting that a combination of impairments results in equaling a listing, but that the discrete impairment of Plaintiff's elbow fracture meets or equals listing 1.07.  ECF No. 12 at 8.  Here, the record contained evidence of a broken elbow, yet the ALJ failed to address listing 1.07, fracture of an upper extremity.  This was an error.

This case is remanded for additional proceedings with instructions that an orthopedic expert be called to testify regarding Plaintiff's severe impairments, whether any impairments singularly or in combination meet or medically equal a listed impairment including listing 1.07 and, if necessary, any resulting functional limitations from such impairments.  The Court declines to remand for an immediate award of benefits for two reasons:  First, the credit as true rule addresses evidence that was rejected by the ALJ, *See York v. Colvin*, No. CV-11-

---

[2]Furthermore, the Court finds that the ALJ's analysis of Plaintiff's impairment under listing 1.02 may be viewed as boilerplate language because it lacks a single citation to the record and would likely fail a challenge under *Lewis* if Plaintiff had raised one.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

201-RHW, 2013 U.S. Dist. WL 1209842 (E.D. Wash. March 25, 2013) *citing Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004), and Dr. Burkett's opinion was never even considered by the ALJ. Second, the ALJ's error lies in the fact that he failed to provide an explanation sufficient to allow this Court to review his step two finding. Therefore, remand is appropriate for the ALJ to provide such an explanation.

**2.  Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the opinions expressed by Jeremiah Crank, M.D., Philip Barnard, Ph.D., and Nancy Schwarzkopf, ARNP. ECF No. 12 at 8-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required

to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**A.     Jeremiah Crank, M.D.**

On October 7, 2013, Dr. Crank completed a Physical Functional Evaluation form for the Washington Department of Social and Health Services (DSHS) in which he diagnosed Plaintiff with left shoulder/forearm/elbow/wrist pain and right knee pain after fall, possible fracture vs. cartilage tear/meniscal tear vs. rotator cuff tear. Tr. 242. He opined that these impairments resulted in in a marked limitation in sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. *Id*. He limited Plaintiff to sedentary work, estimating that this limitation would persist with available medical treatment for twelve months. Tr. 243. The ALJ gave very little weight to this opinion for three reasons: (1) it predated the relevant time period by four months; (2) it is based on a cursory examination; and (3) it is speculative. Tr. 30.

Neither party discusses this first opinion by Dr. Crank. ECF Nos. 12, 16. However, the Court raises the issue of the ALJ's treatment of the opinion *sua sponte* because the ALJ appears to have incorrectly assigned the date of the opinion to the year 2012. The Court admits that Dr. Crank's handwriting is difficult to read and can see how the handwritten dates on the DSHS form were interpreted to be from the year 2012. *See* Tr. 243. However, the handwritten dates at the bottom of the Range of Joint Motion Evaluation Chart submitted with the

opinion is clearly dated October 7, 2013. Tr. 245. Furthermore, the Physical Functional Evaluation form was sent to Dr. Crank by Jeanne MacDonald from the Yakima CSO on August 20, 2013. Tr. 243. This is further evidenced by all the pages of both forms indicating that they were faxed on August 20, 2013 at 3:12 PM and again on October 8, 2013 at 2:01 PM and 2:02 PM. Tr. 241-45. Office visit records from Dr. Crank show that he completed an incapacity exam on October 7, 2013. Tr. 305-08. Additionally, the record consistently state that Plaintiff's shoulder and elbow injury were the result of a fall in August of 2013. Tr. 262, 272, 306 (Dr. Crank's October 7, 2013 office visit note references a fall in August of 2013). Therefore, it would be illogical to see an opinion addressing the injuries from the fall as early as October of 2012.

      The ALJ's first reason for rejecting the opinion, that it predates the relevant time period, is not supported by substantial evidence and does not meet the specific and legitimate standard. Initially, it fails for the reason stated above, that the ALJ assigned the incorrect year to the opinion. Furthermore, in concluding that the opinion predates the relevant time period by four months, the ALJ refers back to the Jurisdictional and Procedural History section of his decision. Tr. 30. In this section, he includes a footnote in which he defined the "period at issue" to be January 29, 2013 through the date of his decision citing 20 C.F.R. 416.912(d) as limiting his consideration of evidence to one year prior to the application date. Tr. 21. This is a misinterpretation of 20 C.F.R. § 416.912(d) (2016)[3], which states the following:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or

---

[3]On March 27, 2017, 20 C.F.R. § 416.912 was amended and language identical to the section reproduced above was moved to 20 C.F.R. § 416.912(b)(1).

> unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

Nothing in this provision supports the ALJ's assertion that his consideration of evidence is limited to twelve months prior to the application date. It only creates a duty on the part of the agency to develop the record one year prior to the application date before denying benefits.

Despite the ALJ's misrepresentation of the federal regulation, the Ninth Circuit has held that opinions predating the date of onset are of limited relevance. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, this opinion does not predate the relevant time period. Dr. Crank's opinion was that Plaintiff would be limited to sedentary work from **October 7, 2013 to October 6, 2014**. Tr. 243. Plaintiff's attorney admitted that amending the onset date to January 29, 2014 was a reflection of the procedural aspects of the case, Tr. 44, undoubtedly considering the requirements of 20 C.F.R. § 416.501, which limits benefits in SSI claims to a time period after application (i.e. Plaintiff would not have received benefits prior to February 2014 even if he proved a disability onset date prior to his January 29, 2014 application). Therefore, the January 29, 2014 onset date, which does not represent an event resulting in the decline of Plaintiff's health, but only the date of his application, is within the period of time Dr. Crank opined the limitation to sedentary work to last. Therefore, the ALJ's first reason for rejecting the opinion is not supported by substantial evidence and fails to meet the specific and legitimate standard.

The ALJ's second reason for rejecting the opinion, that it was based on a cursory examination as evidenced by the range of motion charts, is not supported by substantial evidence. First, Dr. Crank actually performed an examination of Plaintiff and completed the same forms for DSHS in March of 2013. Tr. 249-50. Here, once again, the incorrect date of the evaluation led the ALJ to conclude that

this was Plaintiff's first visit with Dr. Crank. The office visit notes from Dr. Crank for October 7, 2013 shows that in addition to range of motion testing, he performed strength and sensation testing. Tr. 307. Furthermore, Dr. Crank was treating Plaintiff as early as March 19, 2013, and he evaluated Plaintiff just days after the fall that injured the left shoulder and elbow in August of 2013. Tr. 318-21, 326-29. Therefore, the ALJ's conclusion that Dr. Crank's opinion was based on a cursory exam is not supported by substantial evidence.

The ALJ's third reason, that it was speculative, is also not supported by substantial evidence. The ALJ stated that "Dr. Crank speculated that treatment ranging from pain medication to surgery might improve the claimant's physical impairments." Tr. 30. When asked what treatment was recommended, Dr. Crank responded with a list: pain meds; possible injection vs. surgical repair of the affected joints/bones depending on imagery. Any speculation on Dr. Crank's part was how to treat the left upper extremity, not the diagnosis or the functional limitations. This is supported by Dr. Crank sending Plaintiff for imaging and referring him to an orthopedic specialist. Tr. 272, 352.

Therefore, the ALJ's reasons for rejecting Dr. Crank's October 7, 2013 opinion are entirely unsupported by the record. The case is remanded to the ALJ for additional proceeding based on the error at step three and his erroneous treatment of Dr. Cranks October 7, 2013 opinion. Should the new determination proceed past step three, the ALJ will readdress this opinion with the correct date of October 7, 2013.

On March 19, 2013, Dr. Crank completed his first Physical Function Evaluation form for DSHS and began treating Plaintiff. Tr. 246-50. Dr. Crank diagnosed Plaintiff's left knee pain with a concern for a meniscal tear vs. osteoarthritis. Tr. 247. He opined that Plaintiff was severely limited, meaning he is "[u]nable to meet the demands of sedentary work." Tr. 248. Dr. Crank estimated that these limitation would persist for twelve months with available

treatment. *Id*. The ALJ gave this opinion little weight for the same reasons as he provided for the rejection of the October 2013 opinion. Tr. 30. Plaintiff challenged the ALJ's treatment of this opinion. ECF No. 12 at 8-10.

Considering the ALJ's errors in the weighing of the October 2013 opinion, and that the case is to be remanded, the ALJ will readdress the March 19, 2013 opinion on remand as well.

On December 12, 2015[4], Dr. Crank completed a third Physical Functional Evaluation form for DSHS. Tr. 418-22. He discusses Plaintiff's left shoulder/elbow pain in terms of a rotator cuff tendinopathy and a fractured and misaligned radial head. *Id*. Again, he limited Plaintiff to sedentary work for an estimated twelve months with available medical treatment. Tr. 420. The ALJ rejected his opinion for the same reasons as his rejection of the October 2013 opinion. Tr. 30. In support of his conclusion that the opinion is speculative he cited that the diagnosis of the elbow was "likely" and that Plaintiff may need a "possible" left rotator cuff repair. *Id*. Plaintiff challenged the ALJ's treatment of this opinion as well. ECF No. 12 at 8-10.

Defendant concedes that the ALJ's conclusion that the elbow diagnosis is "likely" is not supported by the record, but asserted that the other reasons provided by the ALJ were valid. ECF No. 16 at 12. Considering the case is being remanded for the ALJ to properly address the October 7, 2013 opinion, the ALJ will also readdress this opinion on remand.

Plaintiff requests that Dr. Crank's opinions be credited as true and the case

---

[4]The parties refer to the opinion as being dated November 12, 2015. ECF Nos. 12 at 9; 16 at 11. Again, Dr. Crank's handwriting leads the ALJ to misidentify the date. Tr. The Court refers to it as the December 12, 2015 opinion as Dr. Crank's date is difficult to read, Tr. 420, 422, and this is how the ALJ refers to the opinion, Tr. 30.

be remanded for an immediate award of benefits based on Dr. Crank's limitation to sedentary resulting in a finding of disabled under grid rule 201.12. ECF No. 12 at 11. However, the credit-as-true rule is only applicable when there are no outstanding issues to be resolved. *See Benecke*, 379 F.3d at 595-96. Here, even if Dr. Crank's opinions were credited as true, disability is not a per se conclusion. It is still unclear whether Plaintiff followed prescribed treatment as required by 20 C.F.R. § 406.930(a) because he never received the recommended surgery. This is an issue the ALJ is to resolve upon remand.

### B. Philip Barnard, Ph.D.

On September 12, 2013, Dr. Barnard completed a Psychological/Psychiatric Evaluation for DSHS diagnosing Plaintiff with dysthymic disorder, methamphetamine dependence in full remission, and personality disorder not otherwise specified with avoidant and antisocial features. Tr. 410-14. He opined that Plaintiff had marked limitations in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to adapt to changes in a routine work setting, to be aware of normal hazards and take appropriate precautions, to complete a normal work day and work week without interruptions from psychologically based symptoms, and to maintain appropriate behavior in a work setting. Tr. 412. Dr. Barnard found that Plaintiff had a moderate limitation in an additional six basic work activities, including understanding, remember, and persist in in tasks by following very short and simple instructions. *Id*. He opined that the above limitations would last from twenty-four to forty-eight months with available treatment. *Id*. The ALJ assigned some weight to Dr. Barnard's opinion for two reasons: (1) that it was based on a single exam; and (2) that it was based on Plaintiff's subjective report of symptoms. Tr. 29-30.

The case is being remanded for the ALJ to readdress step three and Dr.

Crank's opinion. Therefore, the ALJ will readdress all medical source opinions in the record upon remand, including that of Dr. Barnard.

C. **Nancy Schwarzkopf, ARNP**

Nurse Schwarzkopf completed a Physical Functional Evaluation form for DSHS on December 9, 2013. Tr. 257-61. She stated his diagnoses included a fracture of the left radial head and pain in the left shoulder resulting in severe limitations in standing, lifting, carrying, handling, pushing, pulling and depressive disorder with sleep disruption resulting in moderate limitations in seeing, hearing, and communicating. Tr. 258. She opined that Plaintiff was severely limited, or "[u]nable to meet the demands of sedentary work," and that this limitation would persist with available medical treatment for twelve months[5]. Tr. 259.

The ALJ gave this opinion "very little weight" for many of the same reasons he rejected Dr. Crank's opinions, specifically stating that the opinion was tentative and speculative, and the opinion failed to explain how and why Plaintiff was disabled. Tr. 30. Since Nurse Schwarzkopf is a nurse practitioner, she is not considered an acceptable medical source, and the ALJ was only required to provide germane reasons to reject her opinion. 20 C.F.R. § 416.902(a); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Nurse Schwarzkopf practiced in the same clinic as Dr. Crank. Tr. 295-304. The ALJ cited to the rejection of Dr. Crank's opinions in support of his rejection of Nurse Schwarzkopf's opinion. This decision is being remanded for the ALJ to properly address Dr. Crank's opinions. Therefore, Nurse Schwarzkopf's opinion must also be readdressed upon remand.

**3. Grid Rule 201.12**

Plaintiff argues that the ALJ erred by not applying grid rule 201.12. ECF

---

[5]The ALJ represents the duration as six to twelve months, but a review of the record shows that the six had been crossed out. Tr. 259.

No. 12 at 11. This argument is premised on the opinions of Dr. Crank being fully credited. *Id.* Since the case is being remanded for the ALJ to properly address all three of Dr. Crank's opinions, he is further instructed that if a step five determination is necessary he will consider the grid rules applicable to his new residual functional capacity determination.

### 4. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 12 at 17-20.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary if the decision upon remand proceeds past step three.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

(9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, there are outstanding issues to be resolved, and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to make a new step three determination addressing listing 1.07 and make a new residual functional capacity determination by reweighing the opinion evidence in the file considering Dr. Crank's October 2012 opinion was actually penned in October 2013 and readdressing Plaintiff's symptom statements. A new residual functional capacity determination will result in new step four and step five determinations. The ALJ will supplement the record with any outstanding evidence and call an orthopedic expert, a psychological expert, and a vocational expert to testify upon remand.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

1       The District Court Executive is directed to file this Order and provide a copy
2 to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff**
3 and the file shall be **CLOSED**.

      DATED May 29, 2018.



                              _____
                                  JOHN T. RODGERS
                        UNITED STATES MAGISTRATE JUDGE